UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


TRAVELERS CASUALTY AND SURETY          CIVIL ACTION
COMPANY OF AMERICA


VERSUS                                 NO: 10-1682


UNIVERSITY FACILITIES, INC.,           SECTION: R(3)
ET AL.

**ORDER AND REASONS**

In this insurance coverage dispute, State Farm Fire and

Casualty Company moves for summary judgment on the grounds that

it has no duty to defend and indemnify Stanley Smith Drywall.[1]

Because State Farm cannot demonstrate that the arbitration claims

are unambiguously excluded from coverage, the Court DENIES the

motion for summary judgment on the issue of duty to defend and

finds that State Farm has a duty to defend Stanley Smith.  The

Court also DENIES the motion for summary judgment on the duty to

indemnify as premature.


**I.    BACKGROUND**[2]

On August 1, 2004, University Facilities, Inc. ("UFI")

entered into a Ground and Building Lease Agreement with

---

[1]      R. Doc. 114.

[2]      All record citations refer to documents in Civil Action
10-1682, unless noted otherwise.

Southeastern Louisiana University ("SLU").[3]  Under the contract,
SLU agreed to lease land located on its Hammond, Louisiana campus
to UFI for the development and construction of student housing
facilities.[4]  That same day, UFI contracted with Capstone
Development Corporation ("CDC") for the construction and
development of the facilities.[5]  CDC contracted with Capstone
Building Corporation ("CBC") to act as general contractor on the
project.  CBC in turn contracted with Stanley Smith Drywall, Inc.
("Stanley Smith") to install drywall.[6]

On May 19, 2009, UFI sued CDC in state court, alleging
numerous design and construction defects.[7]  CDC removed the
matter to this court on June 25, 2009.[8]  UFI then filed an
arbitration demand against CDC in December 2009, and amended its
demand to include CBC in January 2010.[9]  Among the allegations in
UFI's arbitration statement, UFI asserts that "the failure to use
workmanlike practices . . . [in] the installation of interior

---

[3]     R. Doc. 64-6 at 41; R. Doc. 64-7 at 1-30 (Ground and
Building Lease Agreement).

[4]     *Id.*

[5]     R. Doc. 64-6 (Southeastern Louisiana University Student
Housing Facilities Project Development Agreement).

[6]     No. 10-2082, Doc. 1 at 9.

[7]     R. Doc. 82-4, Ex. A.

[8]     No. 09-4178, R. Doc. 1.

[9]     R. Doc. 1 at ¶¶29-30.

wall board before the buildings were blacked in" and "the use of nails instead of screws in certain sheetrock applications" caused permanent damage to the buildings.[10]  CBC then filed a third party claim against its subcontractors, demanding defense and indemnification to the extent CBC may be liable to UFI or any other parties asserting claims against CBC.[11]  In its arbitration statement, CBC alleges that Stanley Smith owes CBC defense and indemnity for the "use of nails instead of screws in certain sheetrock applications."[12]  On March 16, 2010, this case was stayed pending arbitration.[13]

On July 26, 2010, State Farm, Stanley Smith's insurer, filed the present declaratory judgment action.[14]  The Court consolidated State Farm's claim with UFI's liability action on September 3, 2010.[15]  State Firm asserts that Stanley Smith and CBC have made demands under Stanley Smith's insurance policy for coverage and a defense in the arbitration - Stanley Smith as the

---

[10]   R. Doc. 114-4.

[11]   R. Doc. 82-6 (AAA Case No. 69 110 Y 00578 09).

[12]   R. Doc. 114-5.

[13]   No. 09-4178, R. Doc. 13.

[14]   No. 10-2082, R. Doc. 1.

[15]   R. Doc. 25.

named insured, and CBC as an additional insured.[16]   State Farm

thus seeks a declaration that it has no duty (1) to insure

Stanley Smith or CBC, or (2) to defend or indemnify any part

against UFI's claims in the pending arbitration.   On July 13,

2011, this Court denied summary judgment to State Farm on the

issues of duty to defend and indemnify because State Farm had not

sufficiently developed the record to demonstrate the absence of a

genuine issue of material fact.[17]   The Court held that under

Louisiana's eight corners rule, the documents relevant to the

duty to defend were the underlying policy and the statement of

arbitration claims, which were not in the record at the time.

State Farm now moves for summary judgment on its duty to defend

and indemnify and submits UFI's and CBC's statements of

arbitration claims.[18]   CBC opposes the motion and contends that

genuine issues of material fact preclude summary judgment at this

time.[19]   Stanley Smith does not oppose the motion.


**II.  STANDARD**

---

[16]   *Id.* at 9.   State Farm contends that CBC is not an
additional insured under Stanley Smith's policy but does not
brief this issue.   Accordingly, the Court will not address it.

[17]   R. Doc. 110.

[18]   R. Doc. 114.

[19]   R. Doc. 115.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* 2d § 2738 (1983)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by

either countering with sufficient evidence of its own, or
"showing that the moving party's evidence is so sheer that it may
not persuade the reasonable fact-finder to return a verdict in
favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party
will bear the burden of proof at trial, the moving party may
satisfy its burden by merely pointing out that the evidence in
the record is insufficient with respect to an essential element
of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325.
The burden then shifts to the nonmoving party, who must, by
submitting or referring to evidence, set out specific facts
showing that a genuine issue exists. *See id.* at 324. The
nonmovant may not rest upon the pleadings, but must identify
specific facts that establish a genuine issue for trial. *Id.* at
325; *see also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the
entry of summary judgment, after adequate time for discovery and
upon motion, against a party who fails to make a showing
sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden
of proof at trial.'") (citing *Celotex*, 477 U.S. at 332).


## III. DISCUSSION

State Farm contends that it has no duty to defend Stanley
Smith or CBC in the pending arbitration because UFI's

construction and design defect claims are not covered by or are excluded under the Policy. Specifically, State Farm contends that: (1) there is no occurrence or property damage to trigger coverage under the Policy; (2) only breach of contract claims, for which State Farm has no duty to defend, are asserted; and (3) various coverage limitations and exclusions apply to prevent coverage.

An insurer's duty to defend an insured is "a separate and distinct inquiry from that of the insurer's duty to indemnify a covered claim after judgment against the insured in the underlying liability case." *Marco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009)(citing *Elliot v. Cont'l Cas. Co.*, 949 So.2d 1247, 1250 (La. 2007)). The Court, therefore, will address each duty separately.

**A.    Duty to Defend**

An insurer's duty to defend suits against its insured is broader than its obligation to indemnify for damage claims. *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So.2d 37, 52 (La. 2005); *Yount v. Maisano*, 627 So.2d 148, 153 (La. 1993); *Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 290 (5th Cir. 2001). Under Louisiana law, an insurer's duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint. *See Martco*, 588 F.3d at 872

("Under Louisiana's 'Eight Corners Rule,' we must assess whether there is a duty to defend by applying the allegations of the complaint to the underlying policy without resort to extrinsic evidence."); *La. Stadium & Exposition Dist. v. BFS Diversified Prods., LLC*, 49 So.3d 49, 51 (La. App. 2010)("The duty to defend is determined solely from the plaintiff's pleadings and the face of the policy without consideration of extraneous evidence."). The insurer has a duty to defend unless the allegations "unambiguously preclude coverage." *Martco*, 588 F.3d at 872 (citing *Elliot*, 949 So.2d at 1250). The duty to defend "arises whenever the pleadings against the insured disclose a possibility of liability under the policy." *Id.* (citing *Meloy v. Conoco, Inc.*, 504 So.2d 833, 839 (La. 1987)). *See also Holzenthal v. Sewerage & Water Bd. of New Orleans*, 950 So.2d 55, 84 (La. App. 2007)("An insurer must provide a defense to an insured if, assuming all of the allegations to be true, there would be both coverage under the policy and liability to the plaintiff.") (citing *Am. Home Assur. Co. v. Czarniecki*, 230 So.2d 253 (La. 1969)). "The allegations . . . must be liberally interpreted in determining whether the claim falls within the scope of the insurer's duty to defend." *Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 290 (5th Cir. 2001)(citing *Yount v. Maisano*, 627 So.2d 148, 153 (La. 1993)). Here, the relevant pleadings for determining State Farm's duty to defend are UFI's and CBC's statements of

arbitration claims.[20]  The Court undertakes this analysis in two steps: first, the court will determine whether "the complaint alleges a set of facts that would fall within coverage"; second, the Court will determine whether the insurer carries its burden of proving any policy exclusion applies.  *Martco*, 588 F.3d at 873-75.


1. *Whether the complaint alleges a set of facts that would fall within coverage*

   a) *Property Damage*

Stanley Smith's policy specifies that it will apply, *inter alia*, "to bodily injury or property damage caused by an occurrence which takes place in the coverage territory during the policy period."[21]  Property damage is defined as follows:

> Under the Policy, "property damage" is defined as
>
> a. physical injury to or destruction of tangible property, including all resulting loss of use of that property; or
>
> b. loss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of other tangible property.[22]

---

[20]  R. Doc. 110 at 7.

[21]  R. Doc. 82-5 at 25.

[22]  *Id.* at 37.

Here, CBC concedes that the claims raised against Stanley Smith "involve the use of nails instead of screws in certain sheetrock applications" and "the failure to use workmanlike practices . . . [in] the installation of interior wall board before the buildings were blacked in."[23] UFI also alleges that these practices caused permanent property damage to UFI, including, *inter alia*, water and moisture intrusion into the buildings, the failure of floor systems and wall systems, the development of mold and fungus in the buildings, and the permanent deterioration of the buildings. Even if Stanley Smith is not ultimately liable for this damage, Louisiana law requires only that the statement of arbitration claims *allege* property damage covered by the policy. *See Vaughner v. Pulito*, 804 F.2d 873, 877 (5th Cir. 1986)("If upon examination there appears to be potential coverage under the policy and liability to the plaintiff, the insurer is obligated to defend, regardless of the ultimate outcome of the case."); *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So.2d 37, 52 (La. 2005)("[T]he duty to defend does not depend upon the outcome of the suit . . . rather, where the pleadings disclose even a possibility of liability under the contract, the duty is triggered.")(internal quotations omitted). Accordingly, the Court finds that the statement of arbitration claims alleges a

---

[23]    R. Doc. 114-2 at ¶5 (Statement of Uncontested Facts); R. Doc. 115-1 at ¶5 ("CBC does not dispute State Farm's Statement No. 5.").

set of facts that would fall within the Policy's coverage. *See Hardy*, 236 F.3d at 290 (the Court must construe the allegations liberally and in favor of finding coverage).

   *b)   Occurrence*

The Policy defines "occurrence" as, *inter alia*, "an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in bodily injury or property damage."[24]   Louisiana courts interpret "occurrence" to include "an unforeseen and unexpected loss." *North Amer. Treat. Sys. v. Scottsdale Ins.*, 943 So.2d 429, 444 (La. App. 2006). *See also Cunard Line Ltd. Co. v. Datrex, Inc.*, 26 So.3d 886, 890-91 (La. App. 2009)(affirming trial court's determination that "the property damage caused by the defective work and/or defective products is an occurrence or accident which triggers coverage under the terms of the insurance policies"). Such a loss can arise out of faulty construction. *Iberia Parish Sch. Bd. v. Sandifer & Son Constr. Co.*, 721 So.2d 1021, 1023 (La. App. 1999)("If the roof leaks or the wall collapses, the resulting property damage triggers coverage under an 'occurrence' basis policy, even if the sole cause is improper construction and the only damage is to the work performed by the contractor.")

---

[24]    R. Doc. 82-5 at 36.  Although occurrence also means "the commission of an offense" under the Policy, no one contends that an offense was committed.

(citing 1 William S. McKenzie and H. Alston Johnson III, INSURANCE
LAW AND PRACTICE § 183, 15 La. Civ. Law Treat.).

Here, the defects at issue are the use of nails instead of
screws in sheetrock applications and the failure to use
workmanlike practices in the installation of interior wallboard.
"Under Louisiana jurisprudence, the 'accident' is the negligent
act or omission or other fault that caused the loss."  1 William
S. McKenzie and H. Alston Johnson III, INSURANCE LAW AND PRACTICE §
183, 15 La. Civ. Law Treat.  The failure to use workmanlike
practices by prematurely installing wall board and using nails
instead of screws constitutes an occurrence under Louisiana law.
*See Rando v. Top Notch Props.*, 879 So.2d 821, 825-833 (La. App.
2004)(reviewing Louisiana jurisprudence about what constitutes an
"occurrence" and concluding that "the clear weight of authority
in more recent cases considers defects in construction that
result in damage subsequent to completion to be accidents and
occurrences when they manifest themselves"); *Massey v. Parker*,
733 So.2d 74, 75 (La. App. 1999)(defects in home construction
constituted an occurrence).  Further, UFI clearly alleges that
the premature installation of wall board and the use of nails
instead of screws caused the property damage at issue.[25]  *See,
e.g., Motorola, Inc. v. Associated Indem. Corp.*, 878 So.2d 838,
842 (La. App. 2004)(requiring that the occurrence caused property

_____

[25]     R. Doc. 114-4 at 4.

damage in a CGL policy with identical occurrence provision);
*Sandifur*, 721 So.2d at 1023-24 ("coverage is triggered only if
the defect causes property damage during the policy term")(citing
1 William S. McKenzie and H. Alston Johnson III, INSURANCE LAW AND
PRACTICE § 183, 15 La. Civ. Law Treat.).  Accordingly, the
statement of arbitration claims alleges an occurrence.

Because the statement of arbitration claims alleges facts
that would fall within coverage, the Court will determine whether
State Farm has carried its burden of proving that a policy
exclusion applies to the arbitration claims.  *See Martco*, 588
F.3d at 875.


2.   *Whether a policy exclusion precludes coverage*

The insurer "bears the burden of proving the applicability
of an exclusionary clause within a policy."  *Doerr v. Mobil Oil
Corp.*, 774 So.2d 119, 124 (La. 2000)(citing cases).  "A duty to
defend will exist unless the allegations are such that every
claim pleaded in the complaint (and otherwise falling within the
insuring claim) unambiguously falls within an exclusion."
*Martco*, 588 F.3d at 875 (citing *Alert Centre, Inc. v. Alarm
Protection Servs., Inc.*, 967 F.2d 161, 163 (5th Cir. 1992)).  Any
"ambiguity in an insurance policy is construed against the
insurer."  *Id.* (citing *Smith v. Matthews*, 611 So.2d 1377, 1379
(La. 1993)).  State Farm contends that two exclusions apply: (1)

13

the work product exclusion and (2) the impaired property exclusion.[26]

*a)   Work Product Exclusion*

State Farm contends that Policy exclusions based on "your work" or "your product" do not provide coverage "for the cost of repairing faulty workmanship" at issue here.[27]   State Farm does not specify which work product exclusions apply, and the Court notes that several could apply.   The Policy provides that coverage does not apply:

11.  to property damage to:

...

e.   that particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the property damage arises out of those operations; or

f.   that particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it.   This part of this exclusion does not apply to property damage included in the products-completed operations hazard.

...

12.  to property damage to your product arising out of it or any part of it;

---

[26]   R. Doc. 114-1 at 14-18.

[27]   R. Doc. 114-1 at 14.

13. to property damage to your work arising out of it or any part of it and included in the products-completed operations hazard.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor[.][28]

Products-completed operations hazard includes, *inter alia*, "all bodily injury and property damage arising out of your product or your work except products that are still in your physical possession or work that has not yet been completed or abandoned."[29]

State Farm generally contends that the work product exclusion precludes coverage to Stanley Smith because any alleged damage resulted from Stanley Smith's faulty workmanship.[30]  State Farm argues that "Louisiana courts have barred coverage for the cost of repairing faulty workmanship" and relies on *Supreme Services and Specialty Co. v. Sonny Greer, Inc.*, 958 So.2d 634 (La. 2007), in which the Louisiana Supreme Court considered nearly identical policy exclusions to Exclusions 11, 12, and 13 in Stanley Smith's policy.  *Id*. at 639-40.  Although State Farm argues that *Supreme Services* held that "the work product exclusions applied to exclude coverage for *any* property that must

---

[28]    R. Doc. 82-5 at 28.

[29]    R. Doc. 82-5 at 37.

[30]    R. Doc. 114-1 at 14.

15

be restored, repaired or replaced because of the insured's . . .
faulty workmanship,"[31] the Court finds that State Farm
mischaracterizes the Louisiana Supreme Court's holding. *Supreme*
*Services* focused on faulty concrete slabs installed in connection
with a building and a parking lot. *Id.* at 636. The court found
that the work product exclusion applied to this case because the
product at issue - the concrete slabs - had to be repaired or
replaced due to faulty workmanship performed by Greer, the
contractor. *Id.* at 642. There was no coverage because the work
product exclusion "eliminates coverage for the cost of repairing
or replacing the insured's *own* defective work or defective
product." *Id.* at 643 (emphasis added). Accordingly, the work
product exclusion applied to allegations of "damage to the
product itself," *id.* at 641, not to damage to any property that
must be repaired.

Moreover, the other cases State Farm cites do not support
its overly broad reading of *Supreme Services*. *See, e.g., Dawson*
*v. Millers Mut. Fire Ins. Co.*, 794 So.2d 949, 952)(La. App.
2001)(denying coverage based on an explicit policy exclusion
precluding coverage for "physical loss of or damage to property

---

[31]     R. Doc. 114-1 at 15-16.

caused directly or indirectly by any of the following (faulty design and workmanship)"); *Thorn v. Caskey*, 745 So.2d 653, 666 (La. App. 1999)("A general liability policy with a work-product exclusion clause has uniformly been held not to insure any obligation of the policyholder to repair or replace *his own* defective work or defective product.")(emphasis added); *Korossy v. Sunrise Homes, Inc.*, 653 So.2d 1215, 1228-29 (La. App. 1995)(coverage excluded for some work performance claims but not others; product claims were ambiguous and therefore construed in favor of the insured); *Vobill Homes, Inc. v. Hartford Accident & Indem. Co.*, 179 So.2d 496, 497 (La. App. 1965)(a work product exclusion clause "does not insure any obligation of the policyholder to repair or replace *his own* defective work or defective product")(emphasis added).

The Louisiana Supreme Court distinguished situations in which the insured's own product was damaged with situations in which there was "evidence of any injured third person or product as a result of the damaged property." *Supreme Servs.*, 958 So.2d at 642. In these latter instances, "[d]amage to real property arising out of the faulty work . . . would not be excluded as it would be covered under the [products-completed operations hazard]

provision." *Id.* at 645. This is because "[u]nder the PCOH

provision, damages, *other than the faulty product or work itself*,

arising out of the faulty workmanship are covered by the policy."

*Id.* (emphasis added). The court illustrated this distinction

with an example from McKenzie and Johnson's Insurance Treatise:

> Suppose an insured contracted to make and install a sign
> on a commercial building. After the work was completed,
> the sign fell due to defective installation, causing
> damage to the sign, the building's canopy, a parked car,
> and also bodily injury to a pedestrian. The insurer
> covering the products-completed operation hazard would
> cover all claims except the contractor's responsibility
> to repair and replace the sign, coverage for which would
> be excluded under the product and work exclusions.

*Supreme Servs.*, 958 So.2d at 644 (quoting McKenzie and Johnson, §

186 n.34).

Here, the Court finds the illustration in *Supreme Services*

instructive. The arbitration statements allege that Stanley

Smith provided faulty workmanship when it used nails instead of

screws and when it installed interior wall boards before the

buildings were blocked. UFI alleges damage not only to the walls

themselves, but also to the floors and other parts of the

buildings as a result of water and moisture intrusion. As such,

the allegations are not limited to damage to Stanley Smith's own

product. *See City of Alexandria v. Annrich, Inc.*, No. 09-165,

2009 WL 3190341, at *3 (La. App. Oct. 7, 2009) (duty to defend when petition alleged damage to property other than the insured's property); *N. Am. Treatment Sys., Inc. v. Scottsdale Ins. Co.*, 943 So.2d 429, 445 (La. App. 2006)(damage to object that belonged to third party, and not insured, did not fall within the work product exclusion). *Cf. Sibley v. Deer Valley Homebuilders, Inc.*, 32 So.3d 1034, 1040-41 (La. App. 2010)(work production exclusion applied and insurer had no duty to defend when claims in complaint were "directed entirely at the quality of [insured's] product and its work operations"). Because the arbitration statements allege claims that fall under the work product exclusion and claims that are covered by the products-completed operations hazard, the Court finds that the allegations do not preclude a duty to defend. *See Martco*, 588 F.3d at 875 ("A duty to defend will exist unless the allegations are such that every claim pleaded . . . unambiguously falls within an exclusion.").

State Farm also contends that Policy Exclusion 15 applies to deny coverage to Stanley Smith. This provision excludes coverage:

> 15. to damages claimed for any loss, cost or expense incurred by you or others for the loss of use,

withdrawal, recall, inspection repair, replacement,
            adjustment, removal or disposal of:

            a.    your product;

            b.    your work; or

            c.    impaired property;

            if such product, work or property is withdrawn or
            recalled from the market or from use by any person or
            organization because of a known or suspected defect,
            deficiency, inadequacy, or dangerous condition in it[.][32]

State Farm argues that this section provides "a broad exclusion

from coverage . . . for any obligation of restoration, repair or

replacement of the work."[33]   State Farm relies on Section 186 of

McKenzie and Johnson's Insurance Treatise and on *Calcasieu Parish*

*Sch. Bd. v. Lewing Constr. Co., Inc.*, 971 So.2d 1275 (La. App.

2007), yet neither of these sources supports State Farm's

position.   In stating that "a broad exclusion of coverage for any

obligation to repair or replace the insured's product," McKenzie

and Johnson explain the scope of the equivalent of Exclusion 12

in Stanley Smith's policy, which the Court has already discussed.

McKenzie and H. Alston Johnson, INSURANCE LAW AND PRACTICE § 186.

*Calcasieu* focuses on the work production exclusion and the

---

            [32]    R. Doc. 82-5 at 28.

            [33]    R. Doc. 114-1 at 17.

products-completed hazard operations coverage, as distinguished in *Supreme Services*. *Calcasieu*, 971 So.2d at 1276-77.

Rather, Exclusion 15 "is intended to exclude from coverage the cost of preventative or curative action by withdrawal of a product in situations in which a danger is to be apprehended." *Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401, 419 (5th Cir. 1992)(analyzing exclusion with nearly identical language). In *Todd Shipyards*, the Fifth Circuit explained the provenance of exclusions such as the one at issue, making clear that the exclusion requires a "sister" product:

> Exclusion (p) is known as the "sistership" exclusion, a term derived from an occurrence in the aircraft industry in which one plane crashed and its "sisterships" were thereafter grounded and recalled by the manufacturer in order to correct the common defect that had caused the crash. The provision is intended to exclude from coverage the cost of preventative or curative action by withdrawal of a product in situations in which a danger is to be apprehended. It is not, however, intended to exclude from coverage damages caused by the very product whose failure to perform properly aroused apprehension about the quality of "sister" products . . . It is clear, then, that exclusion (p) is not intended to exclude from coverage damages arising from the malfunctioning of the [present] turbine.

*Id.* at 419 (internal citations omitted). *See also Stoute v. Long*, 722 So.2d 102, 106 (La. App. 1998)(this "exclusion requires that the insured's work be withdrawn or recalled because of a

known or suspected defect or dangerous condition in the insured's work"); *City of Plaquemine v. N. Am. Constrs., Inc.*, 683 So.2d 386, 389 (La. App. 1996)("[This exclusionary clause's] interpretation pivots around the word 'withdrawal' and the tangential exposure that the insurer might otherwise incur for similar products that, on the suspicion of also being defective, might be withdrawn from use in order to prevent future damages.'"). Here, the arbitration statements allege damage resulting from faulty workmanship in installing the interior wall board and using nails instead of screws. There are no allegations of preventative withdrawal or recall of Stanley Smith's work because of a known or suspected defect in either Stanley Smith's product or "sister products." Indeed, the arbitration statement does not allege any withdrawal of Stanley Smith's work product. Accordingly, the Court finds that Exclusion 15 does not preclude coverage.

   b)   *Impaired Property Exclusion*

   State Farm also contends that no coverage exists for the arbitration claims because they are excluded under the "impaired property" provision. The Policy provides that there is no coverage for "damages claimed for any loss, cost or expense

incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of . . . impaired property."[34]  The Policy defines impaired property as follows:

> "Impaired property" means tangible property, other than your product or your work, that cannot be used or is less useful because:
>
> a)  it incorporates your product or your work that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> b)  you have failed to fulfill the terms of a contract or agreement.[35]

This provision "only excludes damage to property that has *not* been physically injured." *Martco*, 588 F.3d at 876 (quoting *Gaylord Chem. Corp. v. ProPump, Inc.*, 753 So.2d 349, 355 (La. App. 2000)).  It "does not apply where there is physical damage to property other than the insured's work or product after the product has been put to its intended use." *United Nat. Ins. Co. v. Dexter Honore Const. Co., Inc.*, No. 2:08-CV-638, 2009 WL 1182259, at *9 (W.D. La. Apr. 30, 2009)(internal quotations omitted).  *See also* 1 William Shelby McKenzie and H. Alston Johnson, III, INSURANCE LAW & PRACTICE § 197, 15 LA. CIV. L. TREAT.,(3d

---

[34]  R. Doc. 82-5 at 28.

[35]  *Id.* at 35.

ed.)("The [impaired property] exclusion is not applicable when there is loss of use due to physical injury to the tangible property.").

UFI's statement of arbitration claims includes several allegations of physical damage to property other than Stanley Smith's work. UFI claims that the property damage includes faulty floor systems, exterior doors not shutting properly, mold and fungus infiltration in the buildings, and permanent deterioration of buildings.[36] These claims clearly allege property damage beyond Stanley Smith's work and are thus not susceptible to exclusion under the impaired property clause.

Accordingly, the Court denies State Farm's motion as it pertains to the duty to defend.

3. *Breach of Contract Claims*

State Farm also contends that it has no duty to defend the allegations against Stanley Smith because those claims are breach of contract claims for which no duty exists.[37] In support of this contention, it relies on *Hardy v. Hartford Ins. Co.*, 236

---

[36]    *Id.* at 4.

[37]    R. Doc. 114-1 at 11-13.

F.3d 287 (5th Cir. 2001). *Hardy* concerns a case against Hardy
for breach of contract, breach of fiduciary duty, and fraud. *Id.*
at 290. The Fifth Circuit found that Hardy's policy provided
coverage solely for "all sums which the insured shall become
legally obligated to pay as damages because of . . . personal
injury . . . caused by an occurrence to which this insurance
policy applies." *Id.* Because there was no personal injury in
this case, the policy did not cover the demand against Hardy.
*Id.* at 291. The Court finds *Hardy* inapplicable to the present
case because Stanley Smith's policy covers property damage as
well as personal injuries.

State Farm also relies on *Everett v. Philibert*, 13 So.3d 616
(La. App. 2009), to demonstrate that insurers have no duty to
cover breach of contract claims.[38] The Everetts had filed suit
against Bel Oaks Builders, Inc., alleging negligent hiring,
negligent supervision, breach of contract, and breach of the New
Home Warranty Act. *Id.* at 618. Essex, Bel Oaks' insurer,
contended that two exclusions applied to preclude coverage so
that Essex had no duty to defend Bel Oaks. *Id.* The Contractor
Limitation Endorsement provided:

---

[38]     *Id.* at 12.

> The coverage under this policy does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or any injury, loss or damage arising out of inadequate, improper, faulty or defective construction . . .

*Id.* at 619.  The Breach of Contract Exclusion provided:

> This insurance does not apply to claims for breach of contract, whether express or oral, nor claims for breach of an implied in law or implied in fact contract, whether "bodily injury," "property damage," "advertising injury," "personal injury" or an "occurrence" or damages of any type is alleged; this exclusion also applies to any insured under this policy.
>
> Further, no obligation to defend will arise or be provided by us for such excluded items.

*Id.* at 619.  Although the court held that "the same acts or omissions may . . . give rise to both actions in torts and actions in contract," the Everett's claim was based on the contractually-created duty "to properly and timely construct a residence."  *Id.* at 620.  Because the policy excluded breach of contract claims, the court held that any "tort claim must arise from a duty other than the one imposed by the contract." *Everett*, 13 So.3d at 620.

Here, State Farm does not point to any breach of contract exclusions in State Farm's policy.[39]  State Farm asserts that the

_____

[39]    Although the impaired property exclusion precludes coverage in certain circumstances when tangible property cannot be used or is less useful because of the failure to fulfill the

exclusion of property damage "expected or intended from the standpoint of the insured"[40] rules out any intentional breach of contract claim.[41] Interpreting this exclusion, the Louisiana Supreme Court held that the purpose of this exclusion is to deny coverage "where the insured acts deliberately and intends or expects . . . injury to another." *Breland v. Schilling*, 550 So.2d 609, 610 (La. 1989). Further, this exclusion applies to injuries "which the insured *intended*, not one which the insured *caused*, however intentional the injury-producing act." *Id.* at 611. Here, even assuming that this exclusion applies to breach of contract claims, the statement of arbitration claims is devoid of any allegations that Stanley Smith intended to cause any property damage. Accordingly, the Court finds that the intended injury exclusion inapplicable.

For the foregoing reasons, the Court finds that State Farm has a duty to defend Stanley Smith.

**B.    Duty to Indemnify**

---

terms of a contract, the Court has already determined that this exclusion does not apply.

[40]    R. Doc. 82-5 at 26.

[41]    R. Doc. 114-1 at 13.

27

In determining an insurer's duty to indemnify, the Court is not limited to the allegations in the complaint, but rather "must apply the Policy to the actual evidence adduced at the underlying liability trial together with any evidence introduced in the coverage case." *Martco*, 588 F.3d at 877. *See also Continental Holdings, Inc. v. Liberty Mutual Ins. Co.*, 443 Fed. Appx. 1, 2 (5th Cir. 2011)(in determining duty to indemnify, court should take factual inquiries beyond the complaint even if a final determination of liability is still pending). Although the interpretation of an insurance contract presents a question of law rather than of fact, the Court must apply the policy to the evidence presented to determine whether there is coverage under the insuring clause and whether a policy exclusion applies. *See id.* at 878-84 (applying Louisiana law to determine whether "[a] review of the evidence adduced at trial, the resulting verdict and judgment, and the applicable Louisiana law reveals that [the insured] clearly carried its burden of establishing coverage under the insuring clause"); *Meloy v. Conoco, Inc.*, 504 So.2d 833, 839 (La. 1987)(liability "can only be determined after trial on the merits").

Here, State Farm urges the Court to decide the issue of coverage before the arbitration determines liability. The Fifth Circuit has made clear that "the duty-to-indemnify issue [is] not ripe when the underlying . . . lawsuit has not yet been completed." *Coregis Ins. Co. v. Sch. Bd. of Allen Parish*, No. 07-30844, 2008 WL 2325632, at *2 (5th Cir. June 6, 2008) (applying Louisiana law). *See also New England Ins. Co. v. Barnett*, No. 11-30348, 2012 WL 715261, at *5 (5th Cir. Mar. 6, 2011)("Louisiana law generally provides that until the underlying issue of liability is resolved and the defendant is cast in judgment, the issue of indemnity is premature . . . .")(citing *Mossy Motors, Inc. v. Cameras Am.*, 898 So.2d 602, 607 (La. App. 2005)); *Exxon Mobil Corp. v. Turner Indus. Group LLC*, 339 Fed. Appx. 441, 445 (5th Cir. 2009)(under Louisiana law, determining indemnity is premature until there has been a judicial finding that the putative indemnitee is liable or the charges against it were baseless).

Because liability in the underlying case has not yet been determined, the Court denies as premature State Farm's motion on the duty to indemnify. *See Gabarick v. Laurin Maritime (Am.), Inc.*, No. 08-4007, 08-4156, 2009 WL 43096, at *8 (E.D. La. Jan.

7, 2009); *Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*, No. 05-4202, 2006 WL 2850178, at *4 (E.D. La. Oct. 2, 2006); *Seaboard Marine Ltd. v. St. Paul Fire & Marine Ins. Co.*, No. A. 96-2446, 1996 WL 696354, at *3 (E.D. La. Nov. 25, 1996); *Faucheaux v. Prytania Med. Complex Owners Assoc.*, 642 So.2d 242, 245 (La. App. 1994).

Accordingly, the Court denies State Farm's motion as it pertains to the duty to indemnify.


**IV.  CONCLUSION**

For the foregoing reasons, the Court DENIES State Farm's motion for summary judgment.

IT IS ORDERED that this matter be stayed pending arbitration by the parties.  This matter is administratively closed with right of any party to reopen once the arbitration is complete.


New Orleans, Louisiana, this <u>9th</u> day of April, 2012.

*Sarah Vance*
_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE